JOHN S. LEONARDO
United States Attorney
District of Arizona

FRANK T. GALATI
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Arizona State Bar No. 03404
Telephone (602) 514-7500
Frank.Galati@usdoj.gov

FILED ___ LODGED
___ RECEIVED ___ COPY
DEC 2 8 2012
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Kevin Buurma Angileri,<br><br>Defendant. | NO. CR-12-755-0%-PHX-ROS<br><br>**I N F O R M A T I O N**<br><br>VIO: 18 U.S.C. § 371<br>(Conspiracy) |

THE UNITED STATES ATTORNEY CHARGES:

At all times relevant to this Information:

### INTRODUCTION

1. Enterprise Direct, LLC (hereinafter "EDI") was founded in 2005 by Kevin Angileri, Joseph Monahan and a third person who left EDI shortly after its founding. EDI was in the business of selling computer hardware and software to end users.

2. KEVIN BUURMA ANGILERI was President of Enterprise Direct, LLC.

3. JOSEPH CHRISTOPHER MONAHAN was Chief Operating Officer of EDI.

4. Hewlett Packard (hereinafter "HP") was a manufacturer and supplier of computer hardware and software.

5. Global Technology Finance, LLC (hereinafter "GTF") was a company that provided vendor and accounts receivable financing for technology providers.

6. New England Technology Finance, LLC (hereinafter "NETF") was a single-member limited liability company which was affiliated with GTF and provided financing to EDI.

7. The term "gray market" signifies the trading of a commodity through distribution channels that are unofficial, unauthorized or unintended by the original manufacturer.

8. EDI had agreements with suppliers of computer hardware and software, including HP. EDI's agreement with HP allowed EDI to purchase HP products at wholesale prices under certain conditions. One of those conditions was that EDI would only sell HP products to end customers and would not sell HP products to any intermediary or on the "gray market." HP sold most of its products through authorized distributors as well as through authorized partners, such as EDI, rather than directly to end users. EDI became an authorized partner of HP in 2006.

9. HP's distributors and partners were able to obtain HP products at a slight discount from HP's list price so that they in turn could sell those products for profit to ultimate end users. In order to be able to adjust its prices to address unique circumstances and potentially win additional business, HP developed its "Big Deal" program which authorized substantial discounts to specific end users who agreed to use the products internally and not resell them. Some of the legitimate business reasons HP would provide "Big Deal" discounts include the opportunity for future large volume sales, further utilization of HP products in the customer's technology infrastructure, and continued maintenance of existing HP products. HP "Big Deals" often involved discounts in the millions of dollars.

10. HP offered "Big Deal" discounts to its authorized partners who sold HP products to end users. For authorized partners such as EDI to qualify for the "Big Deal" discounts, authorized partners such as EDI must show HP that (a) there is a competitive market for the products, thereby requiring the discount and (b) that the designated end user is purchasing HP products for its own use and will not resell the HP products. When a "Big Deal" was negotiated through an HP distributor or partner, HP had to approve of the discount provided to the end user and then HP paid a rebate to the distributor or partner equal to the amount of the discount.

11. HP sought to ensure that only legitimate end users received "Big Deal" discounts because the resale of goods purchased under a "Big Deal" harms HP, as well as its distributors,

partners and customers. For that reason, HP would not provide the discount without the representation that the goods would be used internally by the end user.

12. On or about April 7, 2006, NETF entered into multiple agreements with EDI to provide financing for EDI. JOSEPH CHRISTOPHER MONAHAN signed the agreements on behalf of EDI. It was provided that EDI would solicit end users for sales of computer hardware and software, and GTF, through NETF, would fund the purchases of the computer products. GTF/NETF would then receive the rights to the accounts receivable and pay EDI a servicing fee.

## CONSPIRACY
## (COUNT 1)

13. The factual allegations in paragraphs 1 to 12 of the Information are incorporated herein by reference and re-alleged as though fully set forth herein.

14. Beginning at least as early as January, 2007 and continuing through on or around June, 2007, in the District of Arizona and elsewhere, KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN did knowingly and willfully conspire and agree with each other and with persons known and unknown to the Grand Jury to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme, that is, Wire Fraud, in violation of Title 18, United States Code, §1343.

**OBJECT OF THE CONSPIRACY AND SCHEME TO DEFRAUD**

15. It was an object of the conspiracy that KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN and their coconspirators, through the fraudulent schemes described in this Information, (a) obtain computer products from HP and funds from GTF and NETF, the entity that financed EDI, and (b) resell the HP products to unauthorized purchasers and receive payment via wire transmissions.

3

## MANNER AND MEANS OF THE CONSPIRACY AND SCHEME TO DEFRAUD

16. The manner and means employed to effect the object of the conspiracy included the following:

(A) KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN, through EDI, arranged for associates to order on behalf of the associates' purported end-user businesses, HP products from EDI.

(B) Invoices were then submitted by the purported end-user businesses to EDI for the ordered HP products.

(C) EDI, through KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN, created fraudulent invoices to the purported business for the purported purchase and submitted them to HP to obtain the items ordered by the purported businesses of ANGILERI's and MONAHAN's associates.

(D) EDI then purchased the HP products with GTF and/or NETF funding.

(E) The products ordered were then either picked up at HP's "will call" or were shipped to addresses controlled by ANGILERI, MONAHAN or their associates.

(F) After the products were received by ANGILERI, MONAHAN or their associates, they were resold to unauthorized end users, in violation of EDI's agreement with HP.

## OVERT ACTS

17. In furtherance of the aforesaid conspiracy, and to effect the objects of the conspiracy, KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN and others known and unknown performed and caused to be performed, among others, the following overt acts in the District of Arizona and elsewhere:

a. On or about March 30, 2007, defendants caused invoice 23581 in the amount of $16,309.60 to be issued in the name of Light Speed Computers.

b. On or about April 5, 2007, defendants sold computer products related to invoice 23581 to Arbitech, LLC of Irvine, California.

1         c.      On or about April 5, 2007, defendants sold computer products related to invoice 23601 to Arbitech, LLC of Irvine, California.

        d.      On or about April 5, 2007, defendants sold computer products related to invoice 23700 to Arbitech, LLC of Irvine, California.

        e.      On or about April 5, 2007, defendants sold computer products related to invoice 23701 to Arbitech, LLC of Irvine, California.

        f.      On or about April 6, 2007, defendants caused invoice 23601 in the amount of $5,444.98 to be issued in the name of Light Speed Computers.

        g.      On or about April 6, 2007, defendants caused invoice 23700 in the amount of $34,200 to be issued in the name of Light Speed Computers.

        h.      On or about April 6, 2007, defendants caused invoice 23701 in the amount of $2,282.29 to be issued in the name of Light Speed Computers.

        i.      On or about April 10, 2007, defendants caused invoice 23669 in the amount of $4,077 to be issued in the name of Light Speed Computers.

        j.      On or about April 10, 2007, defendants sold computer products related to invoice 23669 to Arbitech, LLC of Irvine, California.

        k.      On or about April 11, 2007, Arbitech, LLC wire transferred $58,236.87 from a bank in California to an account used by defendants at Washington Mutual Bank.

        l.      On or about April 13, 2007, Arbitech, LLC wire transferred $4,077 from a bank in California to an account used by defendants at Washington Mutual Bank.

        m.      On or about April 13, 2007, defendants caused invoice 23727 in the amount of $21,100 to be issued in the name of Light Speed Computers.

        n.      On or about April 13, 2007, defendants caused invoice 23769 in the amount of $32,001.12 to be issued in the name of Light Speed Computers.

        o.      On or about April 13, 2007, defendants caused invoice 23771 in the amount of $17,800 to be issued in the name of Light Speed Computers.

   p. On or about April 13, 2007, defendants caused invoice 23617 in the amount of $64,479.16 to be issued in the name of Light Speed Computers.

   q. On or about April 15, 2007, defendants sold computer products related to invoice 23727 to Arbitech, LLC of Irvine, California.

   r. On or about April 15, 2007, defendants sold computer products related to invoice 23769 to Arbitech, LLC of Irvine, California.

   s. On or about April 15, 2007, defendants sold computer products related to invoice 23771 to Arbitech, LLC of Irvine, California.

   t. On or about April 15, 2007, defendants sold computer products related to invoice 23617 to Arbitech, LLC of Irvine, California.

   u. On or about April 15, 2007, defendants sold computer products related to invoice 23770 to Arbitech, LLC of Irvine, California.

   v. On or about April 15, 2007, defendants sold computer products related to invoice 23826 to Arbitech, LLC of Irvine, California.

   w. On or about April 15, 2007, defendants sold computer products related to invoice 23699 to Arbitech, LLC of Irvine, California.

   x. On or about April 16, 2007, defendants caused invoice 23770 in the amount of $21,573.60 to be issued in the name of Light Speed Computers.

   y. On or about April 16, 2007, defendants caused invoice 23826 in the amount of $8,832 to be issued in the name of Light Speed Computers.

   z. On or about April 16, 2007, defendants caused invoice 23699 in the amount of $30,876 to be issued in the name of Light Speed Computers.

   aa. On or about April 16, 2007, defendants caused invoice 23851 in the amount of $3,863.18 to be issued in the name of Light Speed Computers.

   bb. On or about April 17, 2007, Arbitech, LLC wire transferred $70,901.12 from a bank in California to an account used by defendants at Washington Mutual Bank.

cc.  On or about April 18, 2007, Arbitech, LLC wire transferred $89,607.34 from a bank in California to an account used by defendants at Washington Mutual Bank.

dd.  On or about April 20, 2007, Arbitech, LLC wire transferred $8,832 from a bank in California to an account used by defendants at Washington Mutual Bank.

ee.  On or about April 25, 2007, defendants caused invoice 23862 in the amount of $43,890 to be issued in the name of Light Speed Computers.

ff.  On or about April 25, 2007, defendants caused invoice 23864 in the amount of $31,125.80 to be issued in the name of Light Speed Computers.

gg.  On or about April 25, 2007, defendants caused invoice 23902 in the amount of $42,165 to be issued in the name of Light Speed Computers.

hh.  On or about April 25, 2007, defendants caused invoice 23960 in the amount of $41,650 to be issued in the name of Light Speed Computers.

ii.  On or about April 25, 2007, Arbitech, LLC wire transferred $30,876 from a bank in California to an account used by defendants at Washington Mutual Bank.

jj.  On or about April 27, 2007, defendants sold computer products related to invoice 23862 to Arbitech, LLC of Irvine, California.

kk.  On or about April 27, 2007, defendants sold computer products related to invoice 23864 to Arbitech, LLC of Irvine, California.

ll.  On or about April 29, 2007, defendants caused invoice 24181 in the amount of $75,493 to be issued in the name of Morgan Financial.

mm.  On or about April 30, 2007, defendants sold computer products related to invoice 23851 to Arbitech, LLC of Irvine, California.

nn.  On or about April 30, 2007, defendants caused invoice 23959 in the amount of $7,678.82 to be issued in the name of Light Speed Computers.

oo.  On or about May 3, 2007, Arbitech, LLC wire transferred $78,886.98 from a bank in California to an account used by defendants at Washington Mutual Bank.

1         pp. On or about May 3, 2007, defendants sold computer products related to invoice 23960 to Arbitech, LLC of Irvine, California.

        qq. On or about May 3, 2007, defendants sold computer products related to invoice 23902 to Arbitech, LLC of Irvine, California.

        rr. On or about May 3, 2007, defendants sold computer products related to invoice 23959 to Arbitech, LLC of Irvine, California.

        ss. On or about May 4, 2007, Arbitech, LLC wire transferred $52,184.24 from a bank in California to an account used by defendants at Washington Mutual Bank.

        tt. On or about May 7, 2007, defendants caused invoice 24247 in the amount of $80,560 to be issued in the name of Morgan Financial.

        uu. On or about May 7, 2007, defendants caused invoice 24256 in the amount of $10,576 to be issued in the name of Morgan Financial.

        vv. On or about May 9, 2007, defendants caused invoice 24486 in the amount of $57,850 to be issued in the name of Light Speed Computers.

        ww. On or about May 18, 2007, defendants sold computer products related to invoice 24181 to Arbitech, LLC of Irvine, California.

        xx. On or about May 18, 2007, defendants sold computer products related to invoice 24247 to Arbitech, LLC of Irvine, California.

        yy. On or about May 18, 2007, defendants sold computer products related to invoice 24256 to Arbitech, LLC of Irvine, California.

        zz. On or about May 18, 2007, defendants sold computer products related to invoice 24486 to Arbitech, LLC of Irvine, California.

        aaa. On or about May 18, 2007, defendants caused invoice 24274 in the amount of $6,245 to be issued in the name of Light Speed Computers.

        bbb. On or about May 18, 2007, defendants sold computer products related to invoice 24274 to Arbitech, LLC of Irvine, California.

ccc. On or about May 18, 2007, defendants sold computer products related to invoice 24269 to Arbitech, LLC of Irvine, California.

ddd. On or about May 18, 2007, defendants sold computer products related to invoice 24323 to Arbitech, LLC of Irvine, California.

eee. On or about May 21, 2007, Arbitech, LLC wire transferred $269,622 from a bank in California to an account used by defendants at Washington Mutual Bank.

fff. On or about May 29, 2007, defendants caused invoice 24269 in the amount of $28,770 to be issued in the name of Light Speed Computers.

ggg. On or about May 29, 2007, defendants caused invoice 24323 in the amount of $10,128 to be issued in the name of Light Speed Computers.

In violation of Title 18, United States Code, Section 371.

Dated this 28th day of December, 2012.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*[signature]*

FRANK T. GALATI
Assistant U.S. Attorney